MARS, The (UNITED STATES v.). See Case No. 15,723.

MARSELIS (UNITED STATES v.). See Cases Nos. 15,724 and 15,725.

---

## Case No. 9,107.

### Ex parte MARSH.

[3 App. Com'r Pat. 291.]

Circuit Court, District of Columbia. March 28, 1860.

#### PATENTS — GRAIN VENTILATOR — TUBES — SIDE WALLS.

[A device consisting of perforated tubes set vertically in a grain-bin so as to allow a free circulation of air through the grain, thus preventing overheating, is anticipated by a prior invention of hollow perforated side walls, for the same purpose.]

[Application by Sylvester Marsh for a patent for improvements in grain-bins. The commissioner refused a patent. Applicant appeals.]

MORSELL, Circuit Judge. The appellant states his claim thus: "First. I claim grain-bins constructed with a series of perforated tubes open at both ends, the same being secured in the bottom of said bin so as to occupy a vertical position whereby the atmospheric air is permitted to penetrate into and evacuate from the bin by its natural ascent substantially as described. Second. I claim constructing grain-bins, with outer and inner

walls, the latter being perforated and stayed from the former so as to admit of fresh air circulating around and through the mass of grain in the manner and for the purposes set forth. Third. In grain-bins of otherwise ordinary construction and suitable form I claim the combination of perforated tubes with perforated side walls arranged within the box or chest as described." The commissioner adopted for his decision the report of the examiners dated 24th Oct., 1859, in which report it is said: "The invention which Marsh presents consists of a bin having a series of tubes passing vertically from the top to the bottom of the bin at which points they are open at the bottom for the admission of atmospheric air, and at the top for its exit. The tubes are made of wire gause or of thin metal sheets perforated with numerous holes, and they may be made, it is suggested, funnel shaped at their lower ends, for the purpose of affording a means of securing them more perfectly to the bottom of the bin. It is also suggested in the specifications that in order to insure a thorough circulation not only through the mass of grain but also around it, the bin may be provided with double side walls leaving a free space between them for the passage of a current of air. The inner sides W being formed of metallic sheets perforated with holes in a like manner as the tubes c."

Upon this invention three claims are based, —the first to the tubes, the second to the double walls, and the third to the combinations of the tubes and the walls with each other. In each of these claims, the applicant limits himself to the especial construction he specifies as well when he claims the tubes and the double-walls as separate and distinct devices as when he claims the two in combination. Most of the references are grain kilns, so called because artificial heat and not atmospheric air is used in them to dry the grain subjected to their action; and upon this fact great stress is laid by the counsel for the applicant. Accepting this, for the sake of argument, although in point of fact we do not perceive the force of any such distinction that there is a substantial difference between the references in question because they are kilns, and his invention, because it is a bin, we still find in one of the references a device against which this objection does not lie. We allude to Noah Seitz's cornhouse, an exact anticipation of the double wall as claimed in the second claim of the applicant and therefore in the light in which we find ourselves obliged to regard his invention, an answer also to it as presented in both his other claims. We will state the reasons which lead us to this conclusion as briefly as we can.

The double walls accomplish precisely the same functions that the tubes accomplish, only the quantity of air which may be introduced in this way into any given space or into any given bulk of grain is not so great as would follow the employment of the tubes in addition thereto. Nothing therefore else than a mere difference of degree does or can follow the use of tubes superadded to double walls, a result which would follow equally from a series of double perforated walls, or any other form of open spaces surrounded or enclosed by walls perforated to permit the external air to find its way into the grain. Considered in this aspect, the tubes then are nothing more than an amplification or extension of the idea involved in the use of the double walls, a duplication in other words, and as such they are not patentable as a substantive device. This view of the case as effectually disposes of the third claim as of the first, because the tubes and the double walls being practically the same thing, there can be no patentable combination between them any more than there could be between any two tubes of the series or between the opposite double walls constituting the sides of the bin. These reasons, independent of others which we do not consider it necessary to specify, satisfy us that the decision of the examiner upon the case was correct and hence we recommend the final refusal of a patent.

This report was confirmed and a patent refused by the commissioner on the 25th of Oct., 1859. To which decision there were six reasons of appeal filed. The first in substance is, that it was not shown that the applicant's claim or discovery had been invented by any other person prior to the applicant's discovery thereof, or that it had been printed or described, &c. Secondly: That Noah Seitz's patent for a corn house does not cover in substance or detail each or all of the several things or peculiarities, construction and combination of parts comprised in the applicant's claim, that neither separately nor in combination does the corn house of Seitz comprise a like use, construction or arrangement, &c. The third: Commissioner fails to show that the same special construction of which appellant's bin consists is found in Seitz's corn house, &c. The fourth: Because, that the tubes are something more than an amplification or extension of the idea, in the use of the double walls, at least in any ordinary signification, and do not in Marsh's invention either confine the grain as walls, nor restrict as walls, the diffusion of air, throughout the mass, but permit of its more general distribution at numerous points to the surrounding grain and as a substantive device widely differs from walls. The fifth: Because the commissioner has said he had other reasons, which were not stated as required by section 7 of the act of 1837 [5 Stat. 193]. The sixth and last: Because of a variance between the decision of the examiner and the commissioner, &c.

The commissioner's report in answer to the foregoing reasons, as to the first, is simply a denial of what is alleged by appellant; as to the second, the distinction between a grain-bin and a corn house is merely formal, as to the distinction of applicant's invention in the

construction in the manner described of such a chamber with double walls, the inner wall or that next to the grain being perforated so as to allow the air which circulates between the two walls to come in contact with the grain. The construction has the further peculiarity that perforated tubes open at the extremities pass vertically from the top to the bottom of said chamber for the same purpose of ventilating the grain. An inspection of the case of Seitz shows identically (differing only in the size and form of the perforations in the inner wall) the provision for ventilating the grain which is exhibited in the application. This reference furnishes a substantial anticipation of all the three claims. The first of these is the construction of grain-bins with vertical perforated tubes open at the extremities passing through the space occupied by the grain. It is true, however, that the essence of the invention is a perforated ventilating duct or canal and whether this be rectangular or circular involves but a formal difference. It is still the same substantive invention. Four such ventilating passages appear in the section of Seitz's corn house, two of which may be regarded as passing through the body of the grain. Those two, however, are but the extension or multiplication of the same device, and if this be so the position taken by the office on final examination appears to be tenable,—that there is no combination between the tubes and the double walls which is the subject matter of the third claim, such combination resolving itself into a duplication of the same device. The third is supposed to have been substantially answered. The fourth, an explanation as to the distinction between tubes and walls. The fifth, no law compelling the commissioner to state all his reasons for rejection, &c. The sixth, unimportant. Thus the case appeared to be when all the papers and documents were laid before me by the commissioner according to previous due notice given of the time and place appointed for the hearing, at which time and place also the appellant appeared by his attorney, filed his argument and submitted his case.

The general question to be considered is whether the discovery claimed by the appellant to be new has not substantially been known and used before. The nature and object of the improvement as claimed is to secure and preserve from decay or injury stored cereals, and to keep the same sound and healthy by producing the circulation of fresh air through and around the grain by a peculiar manner of arranging the space in which the grain is to be deposited, so that a constant circulation of air will pass through and around the grain, and more economically by saving the expense of repeatedly stirring and moving the grain. The mode is by openings in a number of tubes, open at both ends, made of wire gauze or metallic sheets perforated with numerous holes of a size too small to suffer the grain to pass through, providing also side walls, leaving a free space between them for the passage of a current of air, the inner sides being formed of metallic sheets perforated with holes, as the tubes. To show the absence of novelty, the commissioner has referred to drawings showing the invention of Noah Seitz, by comparison of which with the one in question, as stated in his report in answer to the second and third reasons of appeal, he says that they are identical, and that the appellant's claim is fully covered by that of Sietz. The nature and object of each appear to be the same,—by a full and thorough circulation of air to prevent the heating and destruction of stored grain, the one in what he calls a bin, the other a corn house with cribs. I think, for the purpose of the issue in this case, there is no essential difference from the circumstances of one being known as a corn house and the other a bin. The arrangement in each by which the object was to be attained, though somewhat different in form, appears to me also to be substantially the same, and so with respect to all the other leading features, nor is there anything to show any material saving of expense. From aught that appears the contrivances of Seitz, by a full circulation of air, is amply sufficient for the protection of the grain, and although more might be an addition, it would not be a patentable improvement.

As to the authorities referred to, by a careful examination, it will be found that the main principle upon which the decisions turned was (whether singularly or in combination the different parts of the arrangements were presented)—the important matter was that a new and valuable result was produced. In this case I do not think that either the means or result were new and valuable according to the established principles of patent law. The decision of the commissioner is therefore hereby affirmed.